UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **KARMELLA GRANT**, | Case Number 1:12 CV 1455 |
| Plaintiff, | Judge Patricia A. Gaughan |
| v. | REPORT AND RECOMMENDATION |
| **COMMISSIONER OF SOCIAL SECURITY**, | |
| Defendant. | Magistrate Judge James R. Knepp II |

## INTRODUCTION

Plaintiff Karmella Grant filed a Complaint (Doc. 1) against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny supplemental security income (SSI) and disability insurance benefits (DIB). The district court has jurisdiction under 42 U.S.C. § 1383(c)(3) and 405(g). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated June 8, 2012). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB and SSI on March 18, 2008, alleging a disability onset date of July 6, 2007, due to lower back abnormalities and pain. (Tr. 103-12, 145). Her claims were denied initially (Tr. 61-66) and on reconsideration (Tr. 72-78). Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 7). Plaintiff (represented by counsel) and a vocational expert (VE) testified at the hearing, after which the ALJ found Plaintiff not disabled. (*See* Tr. 9, 35). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. On June

8, 2012, Plaintiff filed the instant case. (Doc. 1).

## **FACTUAL BACKGROUND**

Personal and Vocational History

Born May 3, 1987, Plaintiff was 23 years old at the time of the ALJ hearing. (Tr. 14, 16). Plaintiff alleges two car accidents, one on July 6, 2007 and one on May 26, 2009, left her with constant back and neck pain. (Tr. 14). Plaintiff has a high school education (Tr. 150) and worked as a restaurant hostess from 2004 until 2006 (Tr. 147), a telemarketer in 2006 (Tr. 147), a babysitter for a three-year old child through 2010 (Tr. 17), and a seasonal elevator operator at the Cleveland Browns stadium from 2005 through the date of the ALJ hearing (Tr. 16-19). Plaintiff said she stopped working due to back pain and because she was pregnant. (Tr. 146).

Plaintiff testified she lived in a house with various family members and her two-year old daughter. (Tr. 20, 177). Concerning daily activity, she said she could drive independently, care for her two-year old daughter, and perform all household chores – albeit with breaks. (Tr. 22). She could lift her daughter, who was about 20 pounds, but did so rarely. (Tr. 22). Instead of bending, Plaintiff had to squat. (Tr. 22). After she worked part time as babysitter or elevator operator, Plaintiff claimed she had to lie down the entire next day due to pain. (Tr. 21). She did indicate Percocet managed her pain (Tr. 164) and a TENS unit helped "a lot" (Tr. 21). Plaintiff also acknowledged there had been no change to the frequency or dosage of her pain medication throughout her alleged disability period. (Tr. 26). And although cleaning, cooking, and picking up and bathing her daughter exacerbated her pain symptoms, she admitted she did not take her pain medication during the day because she needed to care for her two-year old daughter. (Tr. 20,162, 284). Stated otherwise, Plaintiff was able to manage these daily activities without the use of pain medication. In 2008,

Plaintiff reported she had a home health aide to help with bathing, dressing, and cooking (Tr. 174, 178); however, when the ALJ questioned her about household chores, Plaintiff did not mention a home health aide but stated she performed those activities herself "because nobody else [was] going to help her do it." (Tr. 22). On June 21, 2011, physical therapy treatment notes stated Plaintiff did not require assistance for cooking, self-care, grocery shopping, light household cleaning, childcare, or recreational activities despite Plaintiff reporting her pain was a ten on a ten point scale. (Tr. 444).

Medical Evidence

On July 6, 2007, Plaintiff sought treatment at Huron Hospital emergency department following her involvement in an automobile accident. (Tr. 223). At that time, Plaintiff was 25 weeks pregnant. (Tr. 223). Plaintiff was diagnosed with cervical/lumbar strain and instructed to take Tylenol for pain. (Tr. 225).

Seven months later, in February 2008, Plaintiff began treatment at Huron Hospital Outpatient Department for complaints of severe back pain that radiated down her thigh. (Tr. 232-33). She denied needing assistance with self-care and personal hygiene. (Tr. 233). A CT scan of Plaintiff's lumbar spine taken February 19, 2008 revealed posterior disc bulging at L5-S1 but normal architecture and mineralization of the bones. (Tr. 197). An MRI dated March 11, 2008 revealed a minimal bulging disc present at L4-L5 and a bulging disc with a large focal central disc region present at L5-S1 contributing to severe central canal stenosis with abutment of the traversing S1 nerve roots. (Tr. 199). Degenerative disc changes were most severe at L5-S1, where there was a large central disc protrusion. (Tr. 199).

On May 2, 2008, Dr. Nina Karjalainen authored a letter to "whom it may concern" and opined Plaintiff had been suffering from chronic lower back pain since July 2007, she had been

3

referred to neurosurgery, and she would be unable to work for at least the next month. (Tr. 200).

Plaintiff continued treatment at Huron Hospital over the next three years for postpartum care, eye examinations, and chronic lower back pain. (Tr. 236-73). Plaintiff frequently denied needing assistance for self-care or personal hygiene. (Tr. 236, 241, 245, 249, 259, 262). Despite the presence of a bulging disc at L5-S1, Plaintiff was, at first, continually instructed to take Tylenol for pain treatment. (Tr. 242, 246). She was eventually prescribed Oxycodone (Tr. 273) and Percocet (Tr. 260), which she said worked for her pain (Tr. 164). On March 24, 2008, an examination revealed Plaintiff had full motor strength in her upper and lower extremities, a normal gait, and normal range of motion. (Tr. 247). As a precaution, Plaintiff was referred to the neurosurgical department for an examination due to her MRI results. (Tr. 247).

On April 4, 2008 and May 2, 2008, neurosurgeons Samuel Tobias, M.D. and Nina Karjalainen M.D., examined Plaintiff. (Tr. 249-55). Plaintiff's sensation, reflexes, and coordination in her extremities were normal. (Tr. 250). Dr. Karjalainen noted Plaintiff's symptoms were intermittent and controlled with pain medication, and recommended Plaintiff continue with pain management. (Tr. 250). Dr. Tobias noted Percocet provided "good results", she did not experience numbness or tingling, and also referred Plaintiff for pain management. (Tr. 252). Plaintiff had full motor strength in all extremities despite complaints of pain radiating down to her knee. (Tr. 255).

At a June 2008 follow-up visit with Dr. Karjalainen, Plaintiff reported physical and electro helped alleviate her pain. (Tr. 263). She also had full motor strength in all muscle groups and Dr. Karjalainen recommended she continue physical therapy. (Tr. 263). That same day, Dr. Tobias noted there was "no need for [Plaintiff] to undergo surgery" until she lost weight or made the decision to do so. (Tr. 263).

4

On June 3, 2008, state agency physician Gerald Klyop, M.D., reviewed Plaintiff's medical records and rendered a physical functional capacity assessment. (Tr. 201-08). Dr. Klyop found Plaintiff could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. (Tr. 202). He also found Plaintiff could occasionally climb ladders, ropes, or scaffolds. (Tr. 203). W. Jerry McCloud, M.D., another state agency physician, reviewed Plaintiff's medical records and affirmed Dr. Klyop's assessment on October 8, 2008. (Tr. 274).

Plaintiff continued treatment at Huron Hospital with various specialty groups through August 2011, including neurosurgery, pain management, and internal medicine. (Tr. 275-427). Treatment notes from the internal medicine group showed Plaintiff complained of lower back pain (Tr. 276-77, 298, 310, 313, 321, 356, 364, 378, 388, 393, 403) but frequently reported Percocet, physical therapy, or a TENS Units helped with her pain (Tr. 298, 310, 321, 356, 403, 364). On May 7, 2010, Plaintiff said Percocet worked but she used it sparingly, and she was referred to aquatic therapy. (Tr. 356, 364). In addition, objective examination notes showed Plaintiff consistently had a normal spinal range of motion (Tr. 299, 315, 322, 364, 379), normal muscle strength (Tr. 299, 315, 322, 364, 379, 404), normal gait (Tr. 277, 311, 315, 322, 364, 379, 387, 393, 404), normal deep tendon reflexes (Tr. 277, 299, 311, 315, 322, 364, 379, 387, 393, 404), and intact sensation (Tr. 277, 299, 311, 315, 322, 364, 379, 387, 393, 404). On occasion, Plaintiff had restricted spinal range of motion (Tr. 404) and lumbar spine tenderness (Tr. 299).

On August 25, 2010, Plaintiff's treating internist Michael Ganz, M.D., filled out a medical questionnaire. (Tr. 419-20). Dr. Ganz reported Plaintiff had a herniated disc, radiculopathy, neuropathic pain, and myopathy. (Tr. 419). He found Plaintiff could sit for one-half hour during an

5

eight-hour workday, stand and/or walk for one-half to one hour during an eight-hour workday, and would need to take one-half hour unscheduled breaks. (Tr. 419-20). Dr. Ganz also noted Plaintiff would miss work on days she had significant pain. (Tr. 420).

Treatment notes from Huron Hospital's neurosurgical group from January 2009 through January 2010, including those from Drs. Tobias and Karjalainen, also show Plaintiff complained of back pain (Tr. 305, 330, 339, 390) despite normal clinical findings and medication management. On one occasion with Dr. Tobias, Plaintiff complained of chronic lower back pain but reported she "[was] pain free" at the time because she "[was] wearing her TENS unit." (Tr. 305). Further, clinical examination reports from the neurosurgical group showed Plaintiff had a normal gait (Tr. 282, 302, 331, 340), normal muscle strength (Tr. 282, 306, 331, 340), no muscle atrophy (Tr. 282, 331, 340), good range of motion (Tr. 282, 302), and normal sensation (Tr. 282, 302, 331, 340). However, on occasion, Plaintiff did exhibit a stiff gait (Tr. 306), tenderness to palpation in her back and hips (Tr. 282, 302, 306, 390), and slightly reduced muscle strength in her lower extremities (Tr. 302).

In June 2009, a second MRI revealed degenerative disc disease at L4-L5 and L5-S1 and spinal canal stenosis worse at L5-S1. (Tr. 418). In September 2009, Dr. Tobias interpreted Plaintiff's MRI and found degenerative disc disease present with "some mild impingement on the thecal sac but no major neural compression . . . . and [n]o major stenosis. (Tr. 282).

Treatment notes from Huron Hospital's pain management group also showed Plaintiff complained of back pain (Tr. 284, 334) but clinical examinations showed Plaintiff had a normal gait (Tr. 285, 318, 327, 335), normal muscle strength (Tr. 285, 318, 327, 335), normal range of motion (Tr. 285, 318), and no muscle atrophy (Tr. 285, 318, 327, 335).

Plaintiff also engaged in physical therapy at Huron Hospital in 2009 (Tr. 287-97) and 2010

(Tr. 370-74). Plaintiff generally experienced no increased pain with exercise. (Tr. 298, 291, 292, 294, 373). In August 2009, her physical therapist opined Plaintiff did not require assistance with cooking, self-care, grocery shopping, household cleaning, childcare, or recreational activities. (Tr. 295).

Medical Evidence Submitted Subsequent to the ALJ Hearing

After the ALJ hearing, Plaintiff continued with physical therapy at Huron Hospital. (Tr. 427-47). In June 2011, her physical therapist again opined Plaintiff did not require assistance with cooking, self-care, grocery shopping, household cleaning, childcare, or recreational activities. (Tr. 444). Plaintiff also continued to present for chronic back pain (Tr. 451-52) and despite complaints of pain, physical examinations revealed no pain to palpation over her spine, normal range of motion in her spine, intact muscle strength, normal gait, normal reflexes, and intact sensation. (Tr. 452, 460). On January 17, 2011, Plaintiff refused to attend a rehabilitation program for chronic back pain because it interfered with her school schedule. (Tr. 459, 470). Further, in June 2011, Plaintiff reported "pain medication provide[d] [her] with complete relief from pain." (Tr. 444).

Plaintiff also began therapy with psychologist Jill Mushkat, Ph.D., at Huron Hospital between November 2010 and April 2011. (Tr. 465-70). In February 2011, Plaintiff said she had lost weight, attended church weekly, loved school, and was earning an "A" average. (Tr. 469). She also enjoyed swimming and set a goal to have her own apartment. (Tr. 469). On April 1, 2011, Dr. Mushkat noted Plaintiff continued to excel at school and was very involved in school. (Tr. 467). Dr. Mushkat encouraged Plaintiff to perform volunteer work and continue to exercise. (Tr. 467). On April 18, 2011, Plaintiff reported she was excited about going back to school and stated she was taking speech and swimming classes. (Tr. 465). "She state[d] overall she [felt] very good." (Tr. 465).

7

It was specifically noted that "[s]he did not make any complaints of pain." (Tr. 465).

ALJ's Decision

On October 8, 2010, the ALJ found Plaintiff's degenerative disc disease of the lumbar spine with stenosis was a severe impairment, but it did not medically meet or equal a listed impairment. (Tr. 37). The ALJ then determined Plaintiff had the residual functional capacity (RFC) to work at a light exertional level, except she was limited to jobs which would allow her to alternate between sitting and standing as needed. (Tr. 38). Based on VE testimony, the ALJ found Plaintiff could perform past relevant work as a telemarketer, and alternatively could perform other jobs existing in the national economy, including mail clerk, cashier, and elevator operator. (Tr. 42-43).

In explaining his decision, the ALJ concluded the alleged severity of Plaintiff's symptoms did not match the objective record. (Tr. 38-41). The ALJ pointed out that Plaintiff worked part-time after her alleged disability onset date as a baby-sitter for a three-year old and as a seasonal elevator operator at Cleveland Browns games. (Tr. 39). He also noted Plaintiff earned more money working part-time after her alleged onset date than she did before while working full time. (Tr. 39). The ALJ found Plaintiff's ability to perform part-time positions, complete household chores, care for herself and her child independently, and lift her 20 pound daughter – albeit rarely – contradicted her statements of total disability. (Tr. 39). He noted Plaintiff's pain medication had not changed in frequency or dosage and that Plaintiff was able to perform household chores despite not taking pain medication during the day. (Tr. 40). Finally, the ALJ noted Plaintiff found relief with alterative measures and had not explored surgical options, even though she stated her pain had been disabling for two years. (Tr. 41-42).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for SSI and DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a); § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff asserts substantial evidence does not support the ALJ's RFC finding. Specifically, she argues the ALJ improperly focused on part-time work performed after her alleged onset date and her failure to pursue surgical intervention. (Doc. 13, at 11-16).

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. *Id.* § 416.929. An ALJ must also consider and weigh medical opinions. *Id.* § 416.927. When a claimant's statements about symptoms

10

are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on a consideration of the entire record. Social Security Ruling (SSR) 96-7p, 1996 WL 374186, *1. Ultimately, it is for the ALJ, not the reviewing court, to judge the credibility of a claimant's statements. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (ALJ's credibility determination accorded "great weight"). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. The Court may not "try the case de novo, nor resolve conflicts in evidence . . . . " *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

Here, substantial evidence supports the ALJ's finding that Plaintiff could perform light work with a sit/stand option. First, treatment notes from Plaintiff's treating internists, neurosurgeons, and pain management specialists showed her back impairment did not affect her ability to walk (Tr. 277, 282, 285, 302, 311, 315, 318, 322, 327, 331, 335, 340, 364, 379, 387, 393, 404). Her impairment also did not affect her muscle strength (Tr. 282, 285, 299, 306, 315, 318, 322, 327, 331, 335, 340, 364, 379, 404) or her spinal range of motion (Tr. 299, 282, 302, 315, 322, 364, 379). These notes also revealed Plaintiff retained intact sensation (Tr. 277, 282, 302, 299, 311, 315, 322, 331, 340, 364, 379, 387, 393, 404) and normal deep tendon reflexes (Tr. 277, 282, 299, 302, 311, 315, 322, 331, 340, 364, 379, 387, 393, 404).

An ALJ is required to consider all medical and vocational evidence in the record to determine whether Plaintiff has the ability to engage in substantial gainful employment. 20 C.F.R.

§§ 404.1571, 416. 971. Contrary to Plaintiff's assertion, even if the work performed did not rise to the level of substantial gainful employment, it may be used to show a claimant is able to do more work than they actually did. *Id*. Plaintiff said caring for a three-year old, as well as her own child, "[did] not require constant activity" and therefore does not show she can perform light work. (Doc. 13, at 13). However, as Defendant points out, caring for a two-year old and three-year old at the same time requires significant activity and would not permit Plaintiff to remain in bed "practically" all day as she claimed in her disability application. (Tr. 146). Similarly, Plaintiff reported she had to lie down the entire next day after working as an elevator operator to alleviate her pain. However, the ALJ did not find Plaintiff's claims of such disabling pain credible, which is supported by substantial evidence.

Hospital notes reflected Plaintiff frequently denied needing assistance for self-care or personal hygiene. (Tr. 236, 241, 245, 249, 259, 262). Further, physical therapy notes stated Plaintiff did not require assistance with cooking, self-care, grocery shopping, household cleaning, childcare, or recreational activities. (Tr. 295). In addition, Plaintiff experienced no increased pain with exercise during physical therapy. (Tr. 298, 291, 292, 294, 373). On multiple occasions, Plaintiff reported her pain was alleviated by pain medication and TENS unit. (Tr. 164, 250, 252, 298, 310, 321, 356, 356, 364, 403). Indeed, during an office visit with Dr. Tobias, Plaintiff reported she "[was] pain free" at the time because she "[was] wearing her TENS unit." (Tr. 305). Despite reports of relief, Plaintiff admitted she did not take pain medication during the day while caring for her daughter. (Tr. 20). As the ALJ pointed out, Plaintiff was able to perform household chores, care for herself, drive, and lift and bathe her child without the aid of pain relievers. (Tr. 40). Further, the ALJ pointed to additional treatments used to relieve Plaintiff's pain, such as physical and aquatic therapy, hot packs, and

12

stretching. (Tr. 40). And, as noted above, despite consistent complaints of severe pain, clinical examinations showed Plaintiff frequently had a normal a normal gait, full muscle strength, normal range of motion, intact sensation, and normal deep tendon reflexes.

Plaintiff also faults the ALJ for not finding Plaintiff would need to walk around for ten to fifteen minutes every time she changed positions in the work place, in addition to a sit/stand option. (Doc. 13, at 15-16). However, consistent with the ALJ's credibility finding above, there is no clinical support for such a limitation in the record. To the contrary, Plaintiff frequently had normal physical examinations, and she experienced no increased pain with exercise during physical therapy (Tr. 298, 291, 292, 294, 373).

Finally, Plaintiff asserts that by focusing on her failure to pursue surgical intervention, the ALJ failed to examine the "big picture as a whole" when assessing her RFC. (Doc. 13, at 14). However, failure to pursue surgery was just one piece of the "whole picture" the ALJ considered when finding Plaintiff could perform light work. Indeed, in addition to lack of surgical intervention, the ALJ pointed to Plaintiff's limited use of prescription medication, her reports of pain relief from a TENS unit, her ability to maintain her household and care for her two-year old child, and her part-time work earnings. (Tr. 41-42). Further, at the time of the ALJ hearing, there was no plan to undergo surgery, the frequency and dosage of Plaintiff's pain medication had not been adjusted for over a year, and she was engaged in physical and aquatic therapy. Notably, treatments typically used to treat severe back pain were not recommended, such as anesthetic and steroid spinal injections or nerve blocks. Therefore, the ALJ's RFC and credibility findings were supported by substantial evidence.

**CONCLUSION AND RECOMMENDATION**

Following review of the arguments presented, the record, and the applicable law, the Court finds the Commissioner's decision denying SSI and DIB benefits supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

> s/James R. Knepp II
> United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).